## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| Linda DeVooght, and Jennifer Piper, | |
| Plaintiffs, | Case: 20-_____ |
| v. | Hon. _____ <br> United States District Judge |
| City of Warren and William Dwyer, in his Individual Capacity, | Hon. _____ <br> United States Magistrate Judge |
| Defendants. | |

## COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND JURY DEMAND

1.      Plaintiffs Linda DeVooght and Jennifer Piper are women dispatchers employed by the City of Warren Police Department. They are among a group of colleagues, all dispatchers employed by the City of Warren, who filed a lawsuit in this Court, Case No. 20-cv-10812, Hon. George Caram Steeh presiding, against their employer, the City of Warren alleging violations of their 14th Amendment Equal Protection rights and their rights under the Elliott-Larsen Civil Rights Act. Plaintiffs DeVooght and Piper now bring this lawsuit alleging that the City and its Police Commissioner, William Dwyer, have undertaken internal affairs investigations and authorized and implemented exceptionally severe discipline against them, including unpaid suspensions, demotion, and termination, in retaliation for exercising their

1

statutory constitutional rights to oppose unlawful employment discrimination and to seek redress in federal court.

2.     Plaintiffs, who are civilian employees, are required to conduct pat-down searches of women arrestees, which is universally understood to be a responsibility properly left to trained sworn police officers; whereas, similarly situated male dispatchers have no such work demand. Defendants, the City of Warren and its Police Commissioner, require Plaintiffs and their fellow women dispatchers, but not their similarly situated male dispatchers, to conduct these inherently unsafe searches of arrestees instead of assigning the task to one of the City's on-duty female police officers who have been properly trained to conduct the searches, or requesting the assistance of a female office from a neighboring jurisdiction.

3.     Within two weeks of Plaintiffs having filed their lawsuit, Defendants launched a retaliatory internal affairs investigation into a spurious complaint regarding lead Plaintiff Linda DeVooght's conduct as a supervisor of dispatch. After a wide-ranging investigation designed to chill and dissuade the named Plaintiffs and all other women employed in dispatch operations, in late July of 2020, Defendants confronted Plaintiffs DeVooght and Piper, along with three others who had been plaintiffs in the prior lawsuit matter but later withdrew their claims, with threats that they must voluntarily accept unpaid suspensions and, in DeVooght's case a

2

demotion, in lieu of facing even stiffer penalties through formal discipline process. The investigation would never have taken place but for Plaintiffs' prior lawsuit. Defendants have imposed severe discipline on Plaintiffs and others who opposed the disparate treatment of dispatchers based on their sex and participated in formal proceedings regarding the legality of Defendants' discriminatory policy. The investigations and disciplines are based on conduct and alleged infractions that Defendants have commonly overlooked when committed by similarly situated employees who did not engage in such protected activities.

## JURISDICTION, PARTIES AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343(a)(3) and (4), which authorize federal courts to hear civil rights cases; and 28 U.S.C. § 2201, the Declaratory Judgment Act.

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1367 over the state-law claims under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq* ("ELCRA") arising from the same core operative facts as the federal questions.

6.     Plaintiff DeVooght received her Notice of Right to Sue from the EEOC for a charge of retaliation in violation of Title VII, Charge Number 471-2020-02602, on October 15, 2020.

7.     Plaintiff Piper received her Notice of Right to Sue from the EEOC for a charge of retaliation in violation of Title VII, Charge Number 471-2021-00208, on November 13, 2020.

8.     Plaintiff Linda DeVooght is a 48-year-old woman who resides in Sterling Heights, County of Macomb, Michigan.

9.     Plaintiff Jennifer Piper is a 46-year-old woman who resides in Warren, County of Macomb, Michigan.

10.     Defendant City of Warren is an incorporated municipality under Michigan's Home Rule Cities Act and located in Macomb County, Michigan.

11.     Defendant William Dwyer is the Police Commissioner of the City of Warren and resides in the Eastern District of Michigan.

12.     Venue is proper in this Court as Defendant City is located in the Eastern District of Michigan, all parties live and work in the Eastern District of Michigan, and all the events alleged herein occurred in the Eastern District of Michigan.

### Statement of Facts

13.     The City of Warren Police Department employs approximately 20 dispatchers, 4 of whom are men and the rest of whom are women.

14.     The dispatchers employed by the City of Warren Police Department are paid according to two collective bargaining agreements—one for the dispatchers and

one for the supervisors—and these agreements make no distinction in pay between male and female dispatchers or dispatch supervisors.

15.    Plaintiff Linda DeVooght began working as a dispatcher for Defendant City of Warren's Police Department on or about April 6, 1999. She was promoted to a Supervisor of Dispatch on or about February 20, 2015.

16.    In September of 2020, Ms. DeVooght accepted a settlement agreement negotiated through the unions with Defendants to accept a demotion to dispatcher and an unpaid suspension, rather than attempt to appeal a disciplinary determination by Defendant Dwyer that terminated her for baseless charges brought against her in retaliation for bringing this lawsuit.

17.    On October 7, 2020, the City issued a personnel order reinstating DeVooght to the position of dispatcher.

18.    Since October 9, 2020, Ms. DeVooght has been employed by Warren as a Dispatcher.

19.    Plaintiff Jennifer Piper began working a dispatcher for Defendant City of Warren's Police Department on or about January 24, 2005.

**A. The City of Warren Police Department Maintains a Long-Standing Policy that Requires Women Dispatchers to Conduct Custodial Searches of Prisoners; whereas, Male Dispatchers Have No Such Requirement**

20.    The City of Warren Police Department maintains a formal policy regarding the arrest and processing of prisoners that has female dispatchers conduct the search of female arrestees.

21.    In practice, the Police Department also order female dispatchers to conduct the searches of female arrestees, even when there is a female sworn officer available to conduct the search.

22.    The general order and formal policy has no provision for male dispatchers to ever search an arrestee.

23.    In practice, male dispatchers have never conducted a search of an arrestee.

24.    On April 4, 2020, in response to initial negotiations regarding Plaintiffs' filing of their initial Complaint in lawsuit 20-cv-10812, and a since-withdrawn Motion for Preliminary Injunction and Temporary Restraining Order, Defendants issued General Order 20-03, which altered the policy's language to require a dispatcher to conduct a prisoner search when a "same-sex" patrol officer is unavailable.

25.    There is no known instance dating back at least three decades and including since the revised directive issued on April 4, 2020, of a male dispatcher conducting a prisoner search.

26.    Searching a prisoner or arrestee is inherently dangerous work that requires the specialized training of a sworn police officer.

27.    The Warren Police Department's policy indicates that women dispatchers should wear bullet-proof vests when conducting prisoner searches.

28.    This policy of prescribing bullet-proof vests serves as Defendants' admission that conducting prisoner searches is inherently dangerous work not suitable for civilians.

29.    Female dispatchers have been exposed to contagious diseases, bodily fluids, fleas, lice, as well, as extremely aggressive behavior and abuse from arrestees they have been ordered to search.

30.    The City of Warren has provided none or inadequate training to its female dispatchers to conduct these searches.

31.    The City of Warren Police Department General Order regarding the General Description of Duties for Dispatchers was last revised in August of 2003.

32.    This General Order regarding the Duties for Dispatchers mentions as the last of a long list of duties that a dispatcher "assists in the searching/processing of arrested persons in the station, as necessary, at the direction of a supervisor."

33.    The General Order describing the duties of Dispatch Supervisors, which became effective on October 9, 2002 and remains in effect today, makes no mention of prisoner searches as a responsibility, but does indicate that he or she performs general dispatch duties.

34.    The collective bargaining agreements relevant to Dispatchers and Dispatch Supervisors make no mention of prisoner searches as a responsibility of any dispatcher.

35.    Defendants require that female dispatchers be physically able to perform prisoner searches, but do not hold male dispatchers to the same physical job requirements.

36.    For instance, when Plaintiff Jennifer Piper took a medical leave in the fall of 2019, Defendants would not clear her to return to work until she could demonstrate that she was physically able to conduct custodial searches of prisoners.

37.    No male dispatcher has ever had to demonstrate that he was physically able to conduct custodial searches to be cleared to return to work.

38.    Indeed, a male dispatcher during the same time took time off work for a vasectomy, but was allowed to return to his job, which for him was considered light duty, even though he was not physically able to conduct custodial searches.

**B. The City of Warren and Police Commissioner Dwyer have Retaliated Against Plaintiffs and other Female Dispatchers for Opposing this Policy and Seeking Redress through the Courts**

39.    Records dating to the early 1990's and continuing through 2019 demonstrate that Plaintiffs and their former colleagues have consistently and repeatedly complained to the Commissioner, command officers, and to their union representatives regarding the fundamental unfairness that female dispatchers are required to perform a dangerous and odious responsibility that should be performed only by sworn officers.

40.    Plaintiffs have repeatedly been told by Defendants and by their union representatives that "it was not the right time", "not possible", and/or "not a matter for contract negotiations".

41.    Plaintiffs have even requested through their Union and been denied that they be paid a form of "hazard compensation" for being ordered to conduct these dangerous and odious custodial searches of prisoners.

42.    Because Defendants refused to change this unconstitutional and unlawful policy, Plaintiffs explored using a lawsuit to seek redress.

43.    On March 27, 2020, DeVooght and five colleagues filed the initial Complaint in the lawsuit. (Case Number 20-cv-10812, Dkt. 1.)

44.    On April 10, 2020, Plaintiffs filed their First Amended Complaint in this lawsuit. (*Id.* at Dkt. 12.)

45.     In addition to Plaintiffs DeVooght and Piper, Dawn McLean, Tressa Sinha are named in this prior case, and their colleagues Donna Tripi, Suzanne Chaffin, Cheryl Osowski, and Amber Mavis had joined one or both of these first two complaints, but have since withdrawn their claims in this matter. (*Id.* at Dkts. 13, 14, 21.)

46.     On April 10, 2020, Warren Police Lt. David Kriss informed Ms. DeVooght that an internal investigation was being opened against her.

47.     The ostensible reason Defendants provided for opening this investigation related to a dispute raised by a dispatcher known to have performance issues, who redirected concerns about her own performance to a complaint about Ms. DeVooght.

48.     Rather than take this incident for what it was—a poor performer using misdirection to avoid criticism—Defendants used the matter as a pretext to retaliate against Ms. DeVooght for spear-heading a lawsuit challenging the constitutionality and legality of Defendants' use of female dispatchers to search prisoners.

49.     In any other circumstance, this matter raised by the disgruntled, poor performer would have been resolved informally by the supervising officers for the dispatch unit working with the dispatch supervisors, including Ms. DeVooght, and the complaining individual to reconcile the matter.

50.     Ms. DeVooght has over 20 years of experience working in dispatch for Defendants and had not received a single disciplinary incident in that time before Defendants launched their investigation to her after she filed this lawsuit.

51.     Facing this lawsuit initiated by Ms. DeVooght, Defendants acted to punish Ms. DeVooght for challenging their policy and practice in Court.

52.     Rather than support a long-term, outstanding employee with an unblemished record over the obvious machinations of a relatively new, disgruntled, and poor performer, Defendant distorted the allegations against DeVooght and used the complaint as a pretext to undertake a retaliatory investigation.

53.     The ensuing internal affairs investigation involved interviews with nearly all dispatchers, although no one from Ms. DeVooght's day shift was interviewed until after she raised this defect later in the process.

54.     The investigation ranged far beyond the specific complaint raised involving Ms. DeVooght's alleged harassment of the disgruntled, poor performer, and amounted to nothing more than a fishing expedition to dredge up bases for retaliation against DeVooght and her co-plaintiffs.

55.     Defendants' investigation of Ms. DeVooght chilled the resolve of other female dispatchers who were in favor of this lawsuit but did not dare sign on or remain as plaintiffs for fear of facing a similar investigation or challenge to their job security.

11

56.   On July 31, 2020 the charges and specifications issued to Ms. DeVooght as a result of this investigation cited her for misuse of department information systems, including the most severe charge being that she provided to her attorneys a binder full of materials collected and maintained by a retired former colleague—someone not involved with the lawsuit—who had documented and protested for decades the policy of requiring female dispatchers to conduct prisoner searches.

57.   Most of the materials in this binder were also produced by the union in response to Defendant City of Warren's subpoena in the lawsuit, 20-cv-10812.

58.   Most of the materials in this binder could have been acquired by Plaintiffs through discovery or through FOIA prior to filing the lawsuit.

59.   The other charges and specifications refer to Ms. DeVooght's unauthorized use of Defendants' communications system and a database known as C.L.E.M.I.S..

60.   The communications system and C.L.E.M.I.S. are widely used by many of Defendants' personnel for other than official purposes.

61.   Such use of C.L.E.M.I.S. for other than official purposes is widely known and accepted, such that potential violations are neither enforced nor investigated.

62.     On August 3, 2020, Plaintiff DeVooght appeared at a hearing before Defendant Dwyer to address charges and specifications arising from the retaliatory Internal Affairs investigation.

63.     These specifications and charges bore with them severe disciplinary consequence, up to and including demotion, unpaid suspension, and/or termination.

64.     In early August of 2020, Defendants informed Ms. DeVooght that Defendant Dwyer had terminated her employment as discipline for the charges against her.

65.     This punishment is unduly harsh by any standards for the alleged misconduct.

66.     On October 7, 2020, rather than attempt to appeal the loss of her employment and not having the ability to afford a long period while an appeal was pending with no income and no health insurance, Ms. DeVooght agreed to accept a demotion to dispatcher and unpaid suspension in exchange for giving up her right challenge the discipline through the procedures provided in the union contract.

67.     This demotion and suspension, though less severe than termination, constitutes a material change to the terms and conditions of DeVooght's employment in that it includes a loss of title, a loss of pay and benefits, and the loss of other tangible benefits of employment in her former position as supervisor.

68.    Additionally, through the course of this retaliatory internal investigation, Plaintiffs and the women who were previously named in this lawsuit but have since withdrawn were interrogated about their use of the communications system and C.L.E.M.I.S..

69.    In addition to the extreme discipline imposed on Ms. DeVooght, Plaintiff Piper and two other women who were previously in the 20-cv-10812 lawsuit have each received unpaid suspensions of several days instead of facing what Defendants threatened could be weeks of unpaid suspension if they proceeded to a formal discipline process.

70.    Another woman, who has since withdrawn from the 20-cv-10812 lawsuit, accepted two weeks of unpaid suspension rather than face Defendants' threat of a month's suspension had she proceeded to a formal discipline process.

71.    None of these women would have faced these investigatory interviews nor the severe disciplines had they not participated in a lawsuit challenging the constitutionality and legality of Defendants' practice and policy of requiring women but never men who worked in dispatch to search arrestees to the prison.

72.    Also in August of 2020, Plaintiff Jennifer Piper was summoned to Internal Affairs to face unfounded charges of "malicious neglect of duty," when she has never before faced any such accusations or feedback in her over 15 years of employment with the City of Warren.

14

73.     This investigation, which is still ongoing, is a blatant act by Defendants to chill the resolve of the remaining Plaintiffs and discourage any other Warren PD employees from seeking to vindicate their constitutional rights.

74.     These retaliatory actions are materially adverse to Plaintiffs because they have resulted in demotion and tangible losses of pay and benefits.

75.     These unwarranted disciplinary actions were taken to "make an example" of Plaintiffs and other women who spoke out against the practice and policy of requiring only women dispatchers to conduct prisoner searches and thereby dissuade a reasonable employee in Plaintiffs' position from engaging in the protected activities, including their attempt to access the federal courts to vindicate their Constitutional rights, as well as their opposition to unlawful employment practices and participation in formal processes to resolve discrimination claims.

## Count One: 42 U.S.C. § 1983, Retaliation in Violation of Plaintiffs' First Amendment Rights

76.     Plaintiffs incorporate all the above allegations by reference here.

77.     Plaintiffs brought the 20-cv-10812 lawsuit alleging, *inter alia*, violations of the Equal Protection Guarantee in the 14th Amendment of the United States Constitution.

78.     It is an essential matter of public concern to challenge a municipality's violation of its employees' Constitutional rights.

79.    Therefore, these Plaintiffs' rights to bring their lawsuit challenging the constitutionality of Defendant's search policy is guaranteed by the First Amendment of the United States Constitution.

80.    In direct response to the 20-cv-10812 lawsuit and because of Plaintiffs having brought that lawsuit, Defendants immediately initiated an investigation into the conduct of Plaintiff DeVooght.

81.    But for the 20-cv-10812 lawsuit, Ms. DeVooght's conduct that initiated the investigation would not have justified an internal investigation.

82.    During the course of the Internal Affairs investigation, Defendants scrutinized the women associated with the 20-cv-10812 lawsuit and targeted them with an internal affairs investigation, the sole purpose of which was to dig up admissions of policy violations that would otherwise not have warranted attention or enforcement.

83.    As a result of this unwarranted investigation, Ms. DeVooght has been terminated from her employment and then forced to accept a demotion and unpaid suspension in order to be reinstated to employment in a lower level position.

84.    As a result of this unwarranted investigation, Ms. Piper has been subjected to an Internal Affairs investigation and has been forced to accept an unpaid suspension.

16

85.     Additionally, other women previously associated with the 20-cv-10812 lawsuit have suffered unpaid suspensions through this investigation.

86.     These investigations, both in the scope of interviews and in the harshness of the penalties meted out on the women who are Plaintiffs or were previously involved in the 20-cv-10812 lawsuit, have had a dramatic, chilling effect on any of Defendants' employees who might consider seeking redress through the courts for any violation of their Constitutional rights.

87.     Pursuant to 42 U.S.C. §§ 1983, 1988 and other applicable laws, Plaintiffs seek the following relief:

> a.     a declaratory judgment that Defendants have violated Plaintiffs' First Amendment rights by initiating unwarranted investigations and mandating discipline against Plaintiffs DeVooght and Piper;
>
> b.     an order reinstating Plaintiff DeVooght to her former role as Dispatch Supervisor, restoring her seniority in that role, and making her whole with regard to lost wages resulting from her termination, demotion, and unpaid suspension;
>
> c.     an order making Plaintiff Piper whole with regard to lost wages resulting from her unpaid suspension;
>
> d.     an order demanding the dismissal of the pending investigation into Ms. Piper;

e.      monetary damages to compensate Plaintiffs for the many years of extremely dangerous and odious terms and conditions of employment that have been imposed upon them unlawfully because of their sex;

f.      punitive damages reflecting the knowing and deliberate nature of Defendants' retaliation against Plaintiffs DeVooght and Piper for filing this lawsuit;

g.      an award of Plaintiffs' attorney's fees and costs; and

h.      other relief that the Court may deem appropriate.

**Count Two: Violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., By Intimidation and Threats to Persons Exercising their Rights under the Act.**

88.    Plaintiffs incorporate all the above allegations by reference here.

89.    The ELCRA makes it unlawful to coerce, intimidate, threaten, or interfere with a person in the exercise any right under the Act. M.C.L. § 37.2701(f).

90.    Municipalities and governmental entities are persons under the ELCRA.

91.    As set forth above, Defendant City of Warren and Defendant Dwyer launched an unwarranted investigation into Plaintiff DeVooght to intimidate, threaten, and punish her for filing the 20-cv-10812 lawsuit.

92.    As set forth above, Defendant City of Warren and Defendant Dwyer caused this investigation to be pursued in a way that forced the women who are Plaintiffs in the 20-cv-10812 lawsuit or were previously involved in this lawsuit to admit violations of policies that are otherwise unenforced by Defendants.

93.    As set forth above, Defendants' launched an unwarranted investigation and broadly investigated the women dispatchers, whether or not they have been involved in 20-cv-10812 lawsuit in order to interfere with that lawsuit and intimidate the women from complaining about the unlawful conditions of their employment.

94.    As a result of Defendants' unlawful interference and intimidation, Plaintiff DeVooght was suspended, fired, and forced to accept a demotion in order to return to employment with the City in a lower level position.

95.    As a result of Defendants' unlawful interference and intimidation, Plaintiff Piper was forced to take an unpaid suspension and has been subjected to an additional, unwarranted investigation.

96.    Pursuant to M.C.L. § 37.2801 and other applicable laws, Plaintiffs seek the following relief:

    a.    a declaratory judgment that Defendants have violated Plaintiffs' rights under the ELCRA by initiating an unwarranted investigation and mandating discipline against Plaintiffs DeVooght and Piper;

19

b.   an order reinstating Plaintiff DeVooght to her former role as Dispatch Supervisor, restoring her seniority in that role, and making her whole with regard to lost wages resulting from her demotion and unpaid suspension;

c.   an order making Plaintiff Piper whole with regard to lost wages resulting from her unpaid suspension;

d.   monetary damages to compensate Plaintiffs for the many years of extremely dangerous and odious terms and conditions of employment that have been imposed upon them unlawfully because of their sex;

e.   compensatory damages to Plaintiffs DeVooght and Piper for suffering the severe emotional distress and reputational harm caused by Defendants retaliatory punishments against them;

f.   an award of Plaintiffs' attorney's fees and costs; and

g.   other relief that the Court may deem appropriate.

**PITT McGEHEE PALMER**
 **BONANNI & RIVERS**

By:  */s/ Robin B. Wagner*____
Michael L. Pitt (P24429)
Robin B. Wagner (P79408)
Kevin M. Carlson (P67704)
Attorneys for Plaintiffs
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
248-268-7996 (fax)
mpitt@pittlawpc.com
rwagner@pittlawpc.com
kcarlson@pittlawpc.com

Dated:  December 2, 2020

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of the facts and issues involved in this matter.

PITT McGEHEE PALMER
 BONANNI & RIVERS

By:  */s/ Robin B. Wagner*
Michael L. Pitt (P24429)
Robin B. Wagner (P79408)
Kevin M. Carlson (P67704)
Attorneys for Plaintiffs
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
248-268-7996 (fax)
mpitt@pittlawpc.com
rwagner@pittlawpc.com
kcarlson@pittlawpc.com

Dated:  December 2, 2020

22