UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA DEVOOGHT,

    Plaintiff,

vs.

CITY OF WARREN and WILLIAM
DWYER, in his Individual Capacity,

    Defendants.
                              /

Case No. 20-CV-13168

HON. GEORGE CARAM STEEH

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 46) AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 47)

    Plaintiff Linda DeVooght is a dispatcher employed by defendant City of Warren. DeVooght was also a plaintiff in a previous lawsuit filed against the City of Warren, alleging violations of her Fourteenth Amendment Equal Protection rights and her rights under the Michigan Elliott Larsen Civil Rights Act ("ELCRA"), MCL 37.2201, *et seq*. *DeVooght et al. v. City of Warren*, 20-10812. In the present lawsuit, DeVooght alleges that the City of Warren (City) and its Police Commissioner, William Dwyer, undertook Internal Affairs (IA) investigations and authorized and implemented discipline against her in retaliation for exercising her statutory and constitutional rights to oppose unlawful employment discrimination and seek redress in federal court. Plaintiff alleges retaliation for exercising her

rights in violation of the First Amendment (Count I) and the ELCRA, M.C.L. § 37.2101 *et seq.* (Count II).

The Court granted the parties leave to file an additional motion for partial summary judgment limited to two specific issues. ECF No. 45. The first issue is whether the conduct at issue in plaintiff's claims constitutes "protected activity" under a First Amendment analysis. The parties stipulate that this is a matter of law for the Court to decide. The second issue is whether plaintiff suffered a "materially adverse" employment effect for purposes of her First Amendment and ELCRA claims.

The matter is before the Court on plaintiff's motion for summary judgment (ECF No. 46) and defendants' motion for summary judgment (ECF No. 47). Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). As set forth below, the Court finds that plaintiff engaged in protected activity when she filed her gender discrimination lawsuit. The Court further finds that there is a question of fact whether plaintiff suffered a materially adverse employment action.

FACTUAL BACKGROUND

The Court relies on the statement of facts in its Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (ECF No. 35).

## STANDARD FOR SUMMARY JUDGMENT

A motion brought under Fed. R. Civ. P. 56 should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). Summary judgment is "the appropriate procedural device" for resolution of legal questions. *Highland Mining Co. v. United Mine Workers of Am., Dist. 12*, 105 F. App'x 728, 730 (6th Cir. 2004); *Felix v. Young*, 536 F.2d 1126, 1130 (6th Cir. 1976).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

## ANALYSIS

For a claim of First Amendment retaliation, an employee must prove the following elements: (1) they engaged in constitutionally protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated at least in part by protected conduct. *Wurzelbacher v. Jones–Kelley,* 675 F.3d 580, 583 (6th Cir. 2012). If the employee establishes a prima facie case, the burden shifts to the employer to demonstrate "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Eckerman v. Tenn. Dep't of Safety,* 636 F.3d 202, 208 (6th Cir. 2010).

Similarly, to establish a violation of the ELCRA, "a plaintiff must show (1) that [s]he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019).

I.   Protected Activity

The parties agree that whether plaintiff engaged in protected activity is a threshold question and a matter of law for the Court to decide. *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010); *Connick v. Myers*, 461 U.S. 138, 150 & n.10 (1983); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986). To make this determination, courts engage in a three-step inquiry: (1) did the relevant speech address a matter of public concern, (2) was the employee speaking "as a private citizen or as an employee pursuant to her official duties," and 3) whether "the employee's speech interest outweighs 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019) (citing *Connick*, 461 U.S. at 143; quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) and *Pickering v. Bd of Educ.*, 391 U.S. 563, 568 (1968)).

The parties do not agree what constitutes the relevant speech in this case. Plaintiff has always identified the protected speech as the gender discrimination lawsuit she filed against the City of Warren. ECF No. 1 at ¶¶1, 3, 43-44, 48, 51, 54-55, 69, 71, 75, 79-82, 85-86, 91-93. Defendants state that plaintiff was disciplined for intimidating subordinate employees to get them to join her lawsuit

and for misusing the CLEMIS database, therefore these instances of misconduct are what constitute plaintiff's relevant speech.

Plaintiff is the master of her complaint and as such she determines what conduct she claims to be protected. Plaintiff's gender discrimination lawsuit alleged in part that the City of Warren's arrestee search policy endangered the female dispatchers by exposing them to a risk of violence and disease. The lawsuit was more than an employee complaining that something about her workplace was unfair. The lawsuit addressed a matter of public concern in that it related to whether the dispatch center was being operated in accordance with the law. *See Mosholder v. Barnhardt*, 679 F.3d 443, 451 (6th Cir. 2012). Equal protection and inequities between the sexes in a public workplace are "inherently" matters of public concern. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 182 (6th Cir. 2008) (quoting *Connick*, 461 U.S. at 148 n.8).

Second, plaintiff brought the discrimination lawsuit as a private citizen and not in the scope of her employment. "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). Plaintiff's ordinary duties as a dispatch supervisor did not include challenging equal protection violations by the City.

Third, the Court must determine whether the City's interest in promoting the efficiency of public service outweighed plaintiff's interest in filing her lawsuit alleging constitutional violations. Defendants "bear[] the burden of showing a legitimate justification for [the investigation and discipline]. [Courts] look for evidence of the impact of the [speech] on the city's legitimate organizational interests." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 899 (6th Cir. 2001) (quoting *Meyers v. City of Cincinnati*, 934 F.2d 726, 730 (6th Cir. 1991)).

The dispatch center had a reputation as a difficult and stressful work environment well before plaintiff's gender discrimination lawsuit was filed. One factor that seems to have contributed to this reputation is that the female dispatchers felt the City did not respond to their complaints about having to conduct prisoner searches. There is no evidence that filing the lawsuit itself had an impact on the City's legitimate organizational interests. In fact, when Commissioner Dwyer was asked about the impact of plaintiff's lawsuit at his deposition, he denied that it interfered with the operations of the Warren Police Department. (ECF No. 46-10, PageID.2143, sealed). If anything exacerbated the disharmony in the dispatch center, the evidence shows that it could have been plaintiff asking her co-workers if they were going to join in the lawsuit (as defendant argues) and defendant undertaking its internal affairs investigation (as plaintiff argues). When the Court balances the impact of plaintiff filing the gender

discrimination lawsuit against the City's interest in promoting the efficiency of public service, the Court finds that the City has not met its burden.

The Court finds as a matter of law, plaintiff's gender discrimination lawsuit against the City of Warren constitutes protected speech under the First Amendment and the ELCRA.

II. <u>Adverse Employment Action</u>

Whether plaintiffs have presented sufficient evidence to raise a genuine issue of material fact that they suffered an adverse employment action is governed by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The Supreme Court held that for a challenged action to be considered actionable retaliation, it needs to be "materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. at 68 (citations omitted); *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014) (applying *Burlington* definition of "materially adverse" in First Amendment context); *White v. Dep't of Transportation*, 334 Mich. App. 98, 120–21, 964 N.W.2d 88, 97–99 (2020) (adopting *Burlington* standard for ELCRA antiretaliation analysis). A materially adverse action is one which "would chill an ordinary person in the exercise of his First Amendment rights." *See v. City of Elyria*, 502 F.3d 484, 492 (6th Cir. 2007) (citing *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)).

"The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote.'" *Wurzelbacher*, 675 F.3d at 583 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 724 (6th Cir. 2010) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 396 (6th Cir. 1999)). Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact. *Id*. at 583-84 (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

Plaintiff was terminated from her supervisor position and eventually reinstated at a lower level and for lower pay. There is an issue of fact whether these actions would chill an ordinary person from continuing to engage in speech on the illegal nature of the prisoner search policy. It is less clear whether the IA investigation itself can be considered an adverse employment action. However, this issue was raised by defendants for the first time in their reply brief to their own motion for summary judgment. As plaintiff had no opportunity to respond to defendants' argument, the issue is not properly before the Court.

The Court concludes that whether plaintiff suffered a materially adverse employment action is a question for the trier of fact.

III.     Causal Connection

The causation element of a First Amendment retaliation claim "presents a pure fact question about the reason(s) for the adverse action." *DeCrane v. Eckart*, 12 F.4th 586, 602 (6th Cir. 2021) (citations omitted). However, the Court's permission to file a second motion for summary judgment did not extend to the issue of whether the adverse action taken against plaintiff was causally connected to her protected activity. Therefore, the Court will not consider any such argument made by the parties in their second motions for summary judgment.

## CONCLUSION

The Court finds that the conduct at issue in plaintiff's claim constitutes "protected activity" and whether plaintiff suffered a "materially adverse" employment action is a question of fact for the jury. Now, therefore,

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment (ECF No. 46) is GRANTED in part and DENIED in part.

IT IS HEREBY FURTHER ORDERED that defendants' motion for summary judgment (ECF No. 47) is DENIED.

Dated: February 15, 2024

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 15, 2024, by electronic and/or ordinary mail.

s/LaShawn Saulsberry
Deputy Clerk